IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> EL TEQUILA, LLC, and CARLOS AGUIRRE, Individually, <br><br> Defendants. | Case No. 12-CV-00588-JED-PJC |

**DEFENDANTS' REPLY REGARDING
DEFENDANTS' SECOND MOTION TO COMPEL DISCOVERY**

COME NOW Defendants El Tequila, LLC and Carlos Aguirre and respectfully submit their reply as follows:

**PRIVILEGE LOG (Informant Privilege)**

In Plaintiff's Third Amended Index of Privileged Documents ("Privilege Log"), the Plaintiff separately and numerically identifies purported privileged documents. The second column appears to reveal the Bates numbers, but the privilege log is confusing. Privilege Log No. 1, for example, appears to consist of only one page (Bate #448). However, it seems more likely that the number of pages would exceed a single page because of the description in the third column. It appears more likely that the number of pages would be from 448 to 450 because the next number under the second column is 451. In addition, Plaintiff ceases even providing Bates stamp numbers on page 25 and refers generally to 50 pages that were withheld due to alleged informant privileges. Why are there

50 pages not Bate stamped or otherwise identified? How can the Court address the alleged privileges without identification? The Defendants estimate that the total number of documents withheld is 124 Bates stamp pages. In any event, it is clear that the vast majority of purported privilege log entries are alleged to be government informers and the privilege asserted most often is the informant privilege. The Defendants urge that these asserted privileges are improper and the Defendants' Second Motion to Compel should be granted.

There are three reasons this Court should refuse to apply the alleged government informers privilege. First, the reasoning in EEOC v Los Alamos Constructors, Inc, 382 F.Supp 1373 (USDC New Mexico 1974) and Kelly v City of San Jose, 114 FRD 653 (N.D.Cal 1987) should be applied in this case. In Los Alamos, the EEOC sued Los Alamos Constructors, Inc. alleging in general terms allegations of discriminatory practices in employment positions. The employer attempted to conduct discovery to learn the specific details about the claims. The EEOC refused to cooperate in discovery asserting and relying on the informers privilege. The Court reused to uphold the alleged privilege and explained:

> **Equality means a two way street. When an employer is sued by the EEOC, the employer has the same discovery rights as does the EEOC, and flimsy claims of privilege will not be recognized to further a desire by the EEOC to fight an opponent one of whose hands the EEOC wants to tie behind its opponent's back. This case will be decided on all of its facts, and the defendant will have a right to find out what the facts are, and it will have an opportunity to answer specific accusations and charges made against it. For the EEOC to be required to do the very thing volunteered by the Secretary of Labor in the cases relied on by the EEOC isn't going to prejudice plaintiff's case and it isn't going to reveal who acted as a confidential informer. But defendant can then depose persons having knowledge of the facts; it can prepare to rebut testimony adverse to it; it can plan to use testimony favorable to it. Whether the knowledgeable persons volunteered their information isn't relevant, but the information is. Paraphrasing the words of Chief Judge Connell in Timken Roller Bearing Co.**

> **v. United States,** *supra*,[1] **defendant here will not be required to hope for only "accidental justice."**
>
> [382 F.Supp 1373, 1386]

The Defendants here have no interest in discovering whether employees of El Tequila volunteered information to the Department of Labor but the Defendants are very interested in what the information consists of. The investigation was faulty, and the Department of Labor made flawed conclusions. The Defendants urge the Court to consider the historical analysis of the informant privilege in the decision in Los Alamos. The opinion is more like a treatise regarding the use of the informant privilege. The opinion concludes that the use (or misuse) of the privilege interferes with the fair administration of justice. Defendants urge that the attempted use (or misuse) of the privilege in this case by the Plaintiff will interfere with the fair administration of justice in this case. To date, Defendants have produced to Plaintiff precisely 14,000 documents in discovery. It is obvious, of course, that the Department of Labor has no intention of providing meaningful discovery to the Defendants. The Department hopes to successfully use the informant privilege as a shield. However, as is noted in Los Alamos, "**Equality means a two way street**." *Id*. Defendants seek a level playing field.

In Kelly v San Jose, *supra*, the case involves discovery privilege issues in a 1983 civil rights case. Various privileges are discussed. The decision is often cited and has been cited by other courts such as, for example, United States Magistrate Judge Steven P. Shreder in the United States District Court for the Eastern District of Oklahoma in Seabolt v City of Muskogee, 2008 WL 2977865 (2008), and United States District Judge David L. Russell, in Loftis v Duroy, Case CIV-13-910-R (2014). The discussion of the privileges in Kelly is slightly different than here because some of the

---

[1] Timken Roller Bearing Co. v. United States, 341 U.S. 593 (1951).

privileges relate to police files and records including criminal informants. No criminal informant is involved here. The term **government privilege** is used by the Court instead of **informant's privilege**. The meaning is generally the same. The decision notes that "**. . . because privileges operate in derogation of the truth finding process the law places the burden of proving all the elements essential to invoking any privilege on the party seeking its benefits.**" Using this as a cornerstone, the Court explains that the burden is on the Movant to make the equivalent of a *prima facie* showing of harm. The party asserting the privilege (the Department of Labor) must submit an affidavit as follows: The affidavit or declaration from the agency official must include: (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material, (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made. The Defendants in the instant case urge that the Plaintiff Department of Labor has not made such a *prima facie* showing of harm. No affidavit has been submitted by the Department of Labor. Moreover, if and when it does make *prima facie* showing a balancing test is necessary. Under Kelly, the balancing test contains ten criteria follows:

1. The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information.
2. The impact upon persons who have given information of having their identities disclosed.
3. The degree to which government self-evaluation and consequent program improvement will be chilled by disclosure.
4. Whether the information sought is factual data or evaluative summary.
5. Whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question.
6. Whether the police investigation has been completed
7. Whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation.
8. Whether the plaintiff's suit is non-frivolous and brought in good faith.
9. Whether the information sought is available through other discovery or from other sources.
10. The importance of the information sought to the plaintiff's case.

The opinion further notes that the tenth criteria is most important. As will be demonstrated below in this Brief, such a balancing test strongly favors the disclosures to the Defendants. The underlying principle, as explained in Kelly is as follows: Since privileges derogate the search for the truth they are supposed to be narrowly construed. *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

The second defense argument supporting the Second Motion to Compel Discovery exists because of *waiver* of any purported privilege by the employees of El Tequila. Attached as Exhibit 1 are waivers of all privileges regarding information from or about each employee. Such waivers are recognized and upheld by the Tenth Circuit. In Usery v. Local Union 720, 547 F.2d 525 (10th Cir 1977) the 10th Circuit recognizes the important rights of discovery and cautions that the informants privilege is not absolute but is qualified. Of primary importance, of course, is the Defendants' need for disclosure in the preparation of the defense. The decision makes reference to *waiver* by the purported government informer. In fact, it is noted in the decision that disclosure of the requested discovery will, in fact, occur with regard to the informants who *waive* the privilege.

A few days before Local Union 720 was decided that Tenth Circuit also decided the companion case, Usery v. The Honorable Willis Ritter, 547 F.2d 528 (10th cir 1977). Interestingly, this earlier decision also discusses *waiver* by the government informers. In fact, one holding by the 10th Circuit is that the preliminary injunction under consideration was improper because

> **... it restrains the government from ascertaining whether any persons would waive confidentiality of statements made to the government.**
>
> [547 F.2d 528 532]

It is clear that governmental informants may waive the privilege and that is what employees of El Tequila have done. The Defendants urge that any former employees who are also government informers will likewise waive the privilege. They have not yet been asked. If Defendants can learn their identity through discovery, the Defendants will communicate with them to determine whether they also want to waive the privilege. In the alternative, the Plaintiff can communicate with them to determine whether they wish to waive the privilege.

The third reason this Court should refuse to recognize the purported informer privileges is the Defendants have a great need to exercise discovery regarding the claims against them. The balancing test favors the Defendants. The investigation is flawed. The phantom accusations are without merit. The Defendant El Tequila has always met or exceeded the minimum wage and overtime pay requirements. But it is impossible to prepare a defense because the Defendants don't know the bases of the accusations. It is the Defendants who are under attack by the government, but the Defendants are denied access to the materials and information which supposedly form the basis for the accusations. The Defendants are being deprived of information which is material to the

defense. The Defendants are entitled to full disclosure under the requested discovery. The Defendants do not know the evidence which they must be prepared to rebut.

Even a cursory analysis under the ten criteria described in Kelly v City of San Jose, *supra*, reveals that discovery favors the Defendants.

(1)  There is no evidence that disclosure in this case will thwart governmental process. All El Tequila employees have waived the privileges. If, however, the informants are no longer working for El Tequila, there is no longer any threat of termination or other reprisal. There is no credible argument in this case that disclosure here will discourage any citizen from giving the government information.
(2)  There can be no impact on informants because the Act expressly prohibits retaliation. Moreover, all employees have waived the privilege. And if any informants are prior employees, such informants are immune from any such impact because they are not subject to termination or discipline.
(3)  Disclosure will not adversely affect the government.
(4)  The information sought is factual data.
(5)  No person or party requesting the discovery is an actual or potential Defendant in any criminal proceeding.
(6)  There is no public investigation.
(7)  No intradepartmental disciplinary proceeding has arisen.
(8)  The suit is fictitious and is not brought in good faith.
(9)  The information sought in discovery is not available through other discovery.
(10) The information is of critical importance to the Defendants, and they cannot rebut the accusations against them without the requested discovery. (See preceding paragraph beginning on page 6.)

This Court should apply the sound reasoning in Los Alamos and Kelly to this case. The Court should grant Defendants' Second Motion to Compel Discovery. The Plaintiff has failed to make a *prima facie* case for the blanket application of the informant privilege. Even if the Plaintiff had made a *prima facie* case, moreover, the balancing test greatly favors the Defendants.

**PRIVILEGE LOG (Attorney-Client Privilege)**

In the Plaintiff's privilege log, it asserts that substantial discovery propounded by the Defendants should be shielded because of an alleged attorney-client privilege. Defendants disagree and urge that the Plaintiff has failed to meet its burden of proof to establish the privilege and/or the Plaintiff has waived the privilege. The attorney-client alleged privilege is asserted on the following privilege numbers in the privilege log[2]: 34, 35, 36, 40, 42, 44, 45, 46, 48, 49, 52, 53, 54, 56, 57, 75, 66, 67, 68, 69, 70, 74, 76, 77, 84 and 85.

The first consideration of the purported attorney-client privilege claimed by the plaintiff Department of Labor must be the recognition that the attorney arguing for the privilege is also an employee of the Plaintiff and serves in the nature of an in-house counsel or staff attorney. This is of key importance because under such circumstances, a presumption arises that the staff attorney is more likely business than legal in nature. See Opinion and Order of 02/17/10, United States Magistrate Judge Paul J. Cleary, United States District Court for the Northern District of Oklahoma in Lindley v Life Investors Insurance Company of America, Case 08-CV-379-CVE-PJC. Judge Cleary explained that many courts apply "heightened" scrutiny to communications to and from in-house counsel in determining attorney-client privilege. Judge Cleary relied on the following authority:

> **[U]nlike the situation where a client individually engages a lawyer in a particular matter, staff attorneys may serve as company officers, with mixed business-legal responsibility; whether or not officers, their day-to-day involvement in their employers' affairs may blur the line between legal and nonlegal communications; and their advice may originate not in resonse to the client's consultation about a particular problem but with them, as part of an ongoing permanent relationship with the organization., In that the privilege obstructs the truth-finding process and its scope is limited to that which is**

---

[2] In most instances, there are multiple alleged attorney-client privilege documents on the same page of the privilege log.

> **necessary to achieve its purpose, the need to apply it cautiously and narrowly is heightened in the case of corporate staff counsel, lest the mere participation of an attorney be used to seal off disclosure.**
>
> [*Rossi v. Blue Cross and Blue Shield of Greater New York*, 540 n.E.2d 703, 705 (N.Y. 1989) *see also Neuder v. Battelle Pacific Northwest Nat. Lab.*, 194 F.R.D. 289, 295 (D.D.C. 2000); *Neuberger Berman Real Estate Income Fund, Inc. V. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 411 n.20 (D.Md. 2005)]

Accordingly, heightened scrutiny must be followed in reviewing these attorney-client privilege claims. It is readily apparent in this case that the Plaintiff Department of Labor is proceeding in earnest to seal off discovery disclosure from every direction.

Issues related to the attorney-client privilege in this case are controlled by state law. **Lindley,** *Id*., and see **Frontier Refining, Inc. V Gorman-Rupp Co., Inc.**, 136 F.3d 695, 702 n.10 (10th Cir 1998). The Tenth Circuit held in **Montley v. Marathon Oil Co.**, 71 F.3d 1547, 1550-51 (10th Cir. 1995), *cert. denied*, 517 U.S. 1190 (1996) that [T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege. **Scott v. Peterson**, 126 P.3d 1232, 1234 (Okla. 2005) "Generally, the mere status of an attorney-client relationship does not make every communication between attorney and client protected by the privilege."

Indeed, Defendants urge here that because the in-house legal staff of the Department of Labor was involved (as opposed to outside counsel), the communication must be scrutinized carefully. Merely because e-mails or investigation reports were copied to the in-house counsel, such information is not automatically subject to the attorney-client privilege. This Court should require the Plaintiff to meet its burden of proof.

In relying on **Paul R. Rice, 1 Attorney-Client Privilege In the United States, §11.9 (Thomson West 2d ed. 1999)**, United States Magistrate Judge Cleary held in Lindley that it is the burden of the party asserting the attorney-client privilege to show the following:

> **(1) A communication; (2) that was intended to be confidential, and either; (3) from one seeking legal advice or assistance, and; (4) to one reasonably believed to be an attorney at law, or (3) from an attorney; (4) giving requested legal advice or assistance; (5) which reveals a prior confidential communication from the client.**

Defendants urge that the Plaintiff has failed to meet its burden of proof under these criteria. Specifically, Defendants contend that the communications between these Department of Labor employees consisted of the kind of routine day-to-day communications that normally occur between the employees regarding matters which pertain to wage and hour claims. The multitude of communications and e-mails do not necessarily mean that Department of Labor employees were seeking legal advice or assistance or that the Department of Labor attorney was giving any.

Because the Plaintiff has not met its burden, the argument by the Plaintiff that the communication must be shielded from discovery fails.

**PRIVILEGE LOG (Work Product)**

Attorney work product is governed by the Federal standards set forth in Rule 26(b)(3), FRCP. Lindley, *supra*. The burden is on the Plaintiff here because it is asserting the work product privilege. Lindley, *Id*. The Plaintiff must show that the materials are "***documents and tangible things***" prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative. Lindley, *Id*. It is evident in this case, for example, that the Department of labor conducted an investigation of wage and hour issues involving El Tequila. Of course, such an

investigation is not unusual. That is, after all, the primary day-to-day bureau of the Department of Labor. That an investigation was conducted does not mean it was conducted in anticipation of litigation or for trial. Indeed, it was not. Just as is true regarding attorney-client privilege, the alleged work product must be measured by heightened scrutiny. Defendants urge that the Plaintiff has failed to meet its burden of proof.

**PRIVILEGE LOG (DELIBERATIVE PROCESS PRIVILEGE)**

Plaintiff asserts that Defendant's discovery should be shielded because of the deliberative process privilege. But such a privilege does not apply here. As is explained in Kelly, *supra*, the deliberative privilege is very narrow and applies only to developing public policy. Since this case does not involve developing public policy, the privilege does not apply.

**INTERROGATORIES AND REQUESTS**
**FOR PRODUCTION OF DOCUMENTS**

Pursuant to the discovery telephone conference held on August 15, 2014, before United States Magistrate Judge Paul J. Cleary, the Plaintiff was required to supplement the Plaintiff's responses to the written discovery propounded by the Defendants. The Defendants were permitted to file their reply brief after the Plaintiff has supplemented discovery as requested.[3] The Plaintiff submitted to Defendants "**Plaintiff's Revised Objections, Answers, and Responses to Defendant El Tequila, LLC's First Interrogatories and Requests for Production of Documents.**" The Plaintiff filed "**Plaintiff's Revised Objections, Answers, and Responses to Defendant El Tequila LLC's Second Interrogatories and Requests for Production of Documents** on August 25, 2014

---

[3] Defendants filed an unopposed Motion requesting additional time to submit the reply brief (DOC 92). It was granted. (DOC 96).

(DOC 85-4). Even though the First Answers were not filed, they were submitted the same day the Second Answers were filed. Defendants filed a **First Motion to Compel Discovery** (DOC 62) and a **Second Motion to Compel Discovery** (DOC 74). Neither of the Defendants' Motions to Compel Discovery has been ruled on.

Attached to this reply as Exhibit 2 is **Plaintiff's Revised Objections, Answers, and Responses to Defendant El Tequila LLC's First Interrogatories and Requests for Production of Documents**. Also attached to this reply as Exhibit 3 is **Plaintiff's Revised Objections, Answers, and Responses to Defendant El Tequila LLC's Second Interrogatories and Requests for Production of Documents**. Each includes the revisions or supplements made by the Plaintiff in accordance with Judge Cleary's instructions.

Defendants urge that Plaintiff has still failed to properly answer and/or respond to the written discovery. Accordingly, Defendants' brief argument regarding each discovery deficiencies has been inserted. For convenience, each discovery dispute is separately numbered. Following the Court's review of the revised or supplemented responses and Defendants' arguments, the Court should grant Defendants' Motions to Compel Discovery.

## CONCLUSION

The Court should rule on Defendants' First and Second Motions to Compel Discovery. The various privileges asserted by the Plaintiff should not prevent Defendants' discovery. Defendants' rights of discovery are of vital importance. The Plaintiff has been largely successful thus far in playing hid and seek with Defendants. All important discovery initiated by Defendants has been skillfully blocked by purported privilege. But the privileges should not be applied here. Even if

applied, a balancing test should be considered. The Defendants should be permitted to conduct discovery. Justice demands no less.

                Respectfully submitted,

                WILKINSON LAW FIRM

                By: s/ Bill V. Wilkinson
                     Bill V. Wilkinson, OBA No. 9621
                     4812 East 81 Street #302
                     Tulsa OK 74137
                     Tel: 918/663-2252;
                     Fax: 918/663-2254

                ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 15th day of September 2014, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

    Matthew P. Sallusti, Esq.
    U.S. DEPARTMENT OF LABOR
    Office of Solicitor
    525 Griffin Street #501
    Dallas TX 75202
    972/850-3100
    972/850-3101 Fax

                              s/Bill Wilkinson
                              Bill V. Wilkinson