IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

THOMAS E. PEREZ, Secretary of Labor, )
)
)
Plaintiff, )
)
v. ) Case No. 12-CV-588-JED-PJC
)
EL TEQUILA LLC, and )
CARLOS AGUIRRE, )
)
Defendants. )

## OPINION AND ORDER

Before the Court are the Defendants' Motion to Compel Discovery [Dkt. No. 62], and Defendants' Second Motion to Compel [Dkt. No. 74]. Problems with discovery have required several Court interventions, *see* Dkt. Nos. 69, 79, 81, 82, 98; nevertheless, the Court has been advised that after additional briefing and conferences, discovery issues remain unresolved. *See* Dkt. No. 107.

## I
## Background

The U. S. Secretary of Labor ("the Secretary") has brought this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* The Secretary alleges that Defendants: (1) have failed to pay employees the statutory minimum wage, [Dkt. No. 24, ¶VI]; (2) have failed to pay employees for hours worked in excess of 40 hours per week [*Id.*, ¶VII]; and, (3) have failed to maintain

required records of employees' wages and hours [*Id.*, ¶IX].[1] The Secretary seeks Judgment for unpaid wages, an equal sum as liquidated damages and an Order enjoining Defendants from further withholding payment of unpaid wages. Defendants moved to dismiss the Secretary's Second Amended Complaint. [Dkt. No. 26]. The Court denied Defendants' motion in July 2013. [Dkt. No. 29].

The essential elements of the Secretary's claims are (1) that the individuals at issue were employed by Defendants; (2) that they performed work involving interstate commerce; and (3) that they performed work for which they were underpaid. *Pruell v. Caritas Christi*, 678 F.3d 10, 12 (1st Cir. 2012).

## II
## DISCUSSION

### A. General Discovery Principles

The parties to this lawsuit have created a host of needless problems by the manner in which they have conducted discovery to date. Both sides have failed to follow the Federal Rules of Civil Procedure, and have not familiarized themselves with the rulings of this Court as to what is expected of litigants during the discovery. On August 13, 2014, the Court directed the parties to review its decision in *Howard v. Segway, Inc.*, 2013 WL 869955 (N.D.Okla. March 7, 2013), in the hope that opinion would provide guidance as to the Court's expectations regarding discovery. As guidance in any future discovery matters, the Court notes the following principles.

---

[1] Exhibit "A", attached to the Secretary's Complaint, lists approximately 175 persons to whom he alleges unpaid minimum wages and overtime pay are due.

First, omnibus discovery requests seeking "all documents referring to, concerning, relating to. . . . " are unlikely to be enforced by this Court. They are generally too vague and overbroad on their face and do not describe with "reasonable particularity" what is being sought. *Howard*, at *2; *Aikens v. Deluxe Financial Svcs., Inc.*, 217 F.R.D. 533, 538 (D.Kan. 2003) (request or interrogatory is unduly burdensome on its face if it uses the omnibus terms "relating to," or "regarding" with respect to a general category of documents); *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 197-98 (D.Kan. 1996) (interrogatory seeking identity of all documents "pertaining to," was overbroad and unduly burdensome).

Thus, Defendants' Interrogatory No. 2 and the related Request for Production No. 1 are objectionable:

> With regard to each person identified in your answer to Interrogatory No. 1 above, answer the following:
>
> A. Separately identify and describe each e-mail report, work paper, letter, form, note, or other record prepared by and/or received by each such person which relates to, pertains to, or involves the claims and defenses in this case.

[Dkt. No. 63-2, at 7].

Second, when presented with a document request, the responding party has two options: he or she must either object to the request or state that the

request will be granted. *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173, F.R.D. 651, 655 (D.Md. 1997).[2]  Fed.R.Civ.P. 34 provides:

> **(B)** *Responding to Each Item.* For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons.

Rule 34(b)(2)(B).

When a party *both* objects and responds, it creates an ambiguity as to whether all responsive documents are being produced.  Thus, discovery responses such as the following are improper:

> Plaintiff objects to this interrogatory because it is overbroad, unduly burdensome, vague and ambiguous . . . .  Subject to and without waiving these objections, Plaintiff responds as follows . . . .

*E.g.*, Plaintiff's answer to Interrogatory No. 1 [Dkt. No. 63-2 at 3].[3]

Third, broad boilerplate objections are waived if they are not asserted with specificity and if no factual basis for the objection is provided.[4]  *See Howard, supra*, at *3.  Waiver can also occur when the party asserts a boilerplate objection, but then – "without waiving such objections" – responds or agrees to produce documents.  *Id.; Mancia*, 253 F.R.D. at 363-64.

---

[2]    A party may also object in part, but specificity is required.  Fed.R.Civ.P. 34(2)(C).

[3]    Defendants have also been guilty of this sort of response.  *E.g.*, Response to Request No. 2, [Dkt. No. 67-16].

[4]    One court has noted that making such boilerplate objections may be *prima facie* evidence of a Rule 26(g) violation, because if the lawyer had made the "reasonable inquiry" required by the Rule and discovered facts supporting an objection, he or she would have disclosed those facts in the objection.  *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 359 (D.Md. 2008).

4

Fourth, in preparing a discovery request and in responding to such a request, the attorney must comply with Rule 26(g). This is sometimes referred to as the "stop and think" rule. It requires "reasonable inquiry" before a lawyer signs a discovery request or response.

The Rule provides that:

> By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>
> (**A**) with respect to a disclosure, it is complete and correct as of the time it is made; and
>
> (**B**) with respect to a discovery request, response, or objection, it is:
>
> (**i**) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
>
> (**ii**) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
>
> (**iii**) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed.R.Civ.P. 26(g)(1).

The parties are admonished to follow these guidelines and the Rules of Civil Procedure in future discovery.

**(B) The Secretary's Privilege Claims**

In resisting discovery, the Secretary has asserted numerous privileges: Attorney-Client privilege, Work-Product protection, Government Informer privilege, and Deliberative Process privilege. These are discussed below.

**(1) Government Informer's Privilege.**

Defendants urge the Court to find that (1) the Government Informer's privilege is not applicable to this case, or, (2) in the alternative, that even if the privilege does apply, documents can be produced subject to redaction.

The informer's privilege is an evidentiary privilege permitting the Government to withhold the names of persons who provide it with information about crimes or possible violations of the law. *See Roviaro v. U.S.*, 353 U.S. 53, 59 (1957); *Usery v. Local Union 720, Laborers' Int'l Union of N. Am., AFL-CIO* (hereafter, "*Local 720*"), 547 F.2d 525, 527 (10th Cir. 1977); Edward J. Imwinkelried, *The New Wigmore: A Treatise on Evidence*, Evidentiary Privileges, § 7.3, p. 1263 (Wolters Kluwer 2d ed.). The privilege is not limited to criminal cases. The Tenth Circuit has long held the privilege applies in civil cases as well, *Brock v. Gingerbread House, Inc.*, 907 F.2d 115, 116 (10th Cir. 1990), and may even be stronger in the civil context "because the constitutional guarantees assured to criminal defendants are inapplicable." *Matter of Search of 1638 E. 2nd St., Tulsa, Okla.*, 993 F.2d 773, 774 (10th Cir. 1993). Tenth Circuit decisions have removed any doubt about whether the privilege applies in FLSA cases. *See Usery*, 547 F.2d

6

at 531; *Brock v. R.J. Auto Parts and Serv., Inc.,* 864 F.2d 677 (10th Cir. 1988); *Gingerbread House,* 907 F.2d at 116-17; *U.S. Dept. of Labor v. La Familia Corp.,* 2012 WL 1715359, *4-*5 (D.Kan. May 15, 2012). The privilege is not absolute. The discovery rights of the Defendants must be balanced against the privilege. *Local 720,* 547 F.2d at 527-28. However, "[a]bsent extraordinary circumstances . . . the evidentiary rule recognizing a qualified privilege applies in preliminary proceedings not determinative of the merits of a controversy." *Id.* at 528.

Defendants rely heavily on *E.E.O.C. v. Los Alamos Constructors, Inc.,* 382 F.Supp. 1373 (D.N.M. 1974), but that case does not support Defendants' argument that the privilege should not be applied. The court in *Los Alamos* found that the informer's privilege *did* protect the identities of "informers" to the EEOC. *Id.* at 1386. The Court ordered the Plaintiff to provide the names of persons with knowledge of the asserted claims, but held that the names of informers did not have to be specifically noted. *Id.* at 1385.

Defendants also rely on *Kelly v. City of San Jose,* 114 F.R.D. 653 (N.D.Cal. 1987), but the Court finds that case unpersuasive. First, it is not a decision of a court within the Tenth Circuit. Second, *Kelly* pre-dates decisions by the Tenth Circuit Court of Appeals such as *Gingerbread House,,* 907 F.2d 115. *Gingerbread House* makes clear that during the discovery stage of litigation, in order to obtain the requested discovery, Defendants must show a "substantial need for the information." *Id.* at 116.

7

Defendants further assert that the Department of Labor must initially submit an affidavit supporting its claim of privilege. [Dkt. No. 100, at 4]. Defendants contend that "No affidavit has been submitted by the Department of Labor." [*Id.*]. Defendants are wrong. Plaintiff has submitted the affidavit of David Weil, administrator of the Wage and Hour Division of the U.S. Department of Labor. [Dkt. No. 85-5]. This affidavit provides the necessary foundation for the privilege claim.

Defendants next claim that the privilege has been waived by El Tequila employees. Defendants have submitted 90 pages of forms from individuals purporting to waive all privileges "concerning information from me or about me in the above-listed case." [Dkt. No. 100-1]. There are multiple problems with Defendants' waiver argument. First, and most importantly, the privilege is not the employees' to waive. The privilege belongs to the government, not the employees. *Roviaro*, 353 U.S. at 59; *Sanders v. Canal Ins. Co.*, 924 F.Supp. 107, 110 (D.Or. 1996) (only the government may claim the privilege). Defendants contend that *Local 720* states employees who have given information to the government may waive the Government Informers' privilege. Defendants have badly misread this case. *Local 720* does not stand for the proposition Defendants claim.

*Local 720* was an action brought by the Secretary of Labor under the FLSA. In gathering information for the case, the Secretary had promised informers

confidentiality. When confronted with discovery requests seeking the identities of employee-informants, the Secretary objected. *Local 720*, 547 F.2d at 530. After the Court overruled the objections, the Secretary sent a letter to each person who had provided information asking whether he or she would release him from the promise of confidentiality. The Secretary stated that "*he* would waive privilege as to consenting informants." *Id.* (emphasis added). Thus, it is clear that the statement cited by Defendants is not a holding of the case. It is nothing more than a recitation of a fact in the case. Furthermore, the language cited by Defendants does not support their position. The statement says that the *Government* would waive the privilege as to consenting witnesses. Defendants have offered no legal authority for the proposition that an informer can unilaterally waive the Governmental privilege.[5]

Finally, Defendants contend that a balancing of interests favors disclosure of the informers' names and information. "At the discovery stage of litigation, the party attempting to overcome the privilege must show a 'substantial need for the requested breach of confidentiality' to tip the scales in favor of disclosure." *La Familia*, 2012 WL 1715359, at *4 (*citing Local 720*, 547 F.2d at 528). Defendants have the burden of showing a "specific need for discovery which

---

[5] Furthermore, the waiver forms submitted by Defendants have little evidentiary weight. They are not authenticated in any way, and Defendants have offered no explanation of the circumstances under which the forms were executed.

supersedes the need for an informer's privilege."  *Martin v. Albany Business Journal*, 780 F.Supp. 927, 937 (N.D.N.Y. 1992).

The Secretary's interest in maintaining the informers' privilege is the public interest in enforcement of the FLSA.  As the Court noted in *Martin*, Congress provided few enforcement mechanisms in the Act, relying instead on information brought by employees seeking to vindicate their rights under the Act.  *Id.* at 937-38.  To secure such information, the Secretary often gives assurances of confidentiality to informers to encourage their assistance.  The Secretary also seeks to prevent retaliation against informers, whether they are present or past employees.  *See, Rutherford v. Am. Bank of Commerce*, 565 F.2d 1162, 1166 (10th Cir. 1977) (*citing Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306 (2d Cir. 1972)).

On its side, Defendants have offered little to show substantial need.  They assert that this is a case of "revenge and retaliation" [Dkt. No. 63, at 3], a "witch hunt" [*id.* at 6], and that it is "literally a life or death matter" for El Tequila [Dkt. No. 72 at 1].  None of these conclusory statements assist the Court's determination.  Defendants also assert that they "must be able to prove that the investigation conducted by the Defendant (sic) was shoddy and below acceptable standards." [Dkt. No. 63, at 6].  However, the burden is on the Secretary to establish that Defendants have violated the terms of the FLSA.  As the Court pointed out in *Local 720*, the issues in cases such as this are simple:  Did

employer maintain the required records and do those records establish that its employees were properly paid a minimum wage and any required overtime? The records related to those issues are in the possession of the Defendants and the "facts pertaining to each are within the knowledge" of the Defendants. *Local 720*, 547 F.2d at 528. Defendants have the list of persons for whom the Secretary is making a claim. Defendants have the time and payroll records for each of those persons and the facts concerning those employees are within the Defendants' knowledge and possession.

Tenth Circuit decisions hold that the proper time for release of informer/witnesses' names is at pre-trial. *Id.* at 528; *Gingerbread House*, 907 F.2d at 117 ("the pre-trial conference is the appropriate occasion generally for identification of witnesses").[6]

Here, as in *Local 720*, Defendants' "failure to show a substantial need for the requested breach of confidentiality at the discovery stage tips the scales in favor of the government." 547 F.2d at 528. Accordingly, the Motion to Compel witness/informers' names is **DENIED**.

---

[6] This holding is consistent with authority cited by the Defendants in their Reply brief [Dkt. No. 72, at 4]. *Wirtz v. Hooper-Holmes Bureau, Inc.*, 327 F.2d 939 (5th Cir. 1964). (Defendants miscite the case as *White v. Hooper Holmes*). In *Wirtz*, the trial court dismissed an action by the Secretary of Labor for failure to disclose witness names <u>at the pre-trial conference</u>. The dismissal was affirmed by the Court of Appeals.

11

### (2) Attorney-Client Privilege

The attorney-client privilege is a rule of evidence that protects the confidentiality of communications between an attorney and his client when certain conditions are satisfied. Its purpose is to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *In re Qwest Communications Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (*quoting Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981)).

The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *U.S. v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358-59 (D.Mass. 1950).

In a case such as this, federal common law governs issues relating to the privilege.[7] The privilege protects *communications* between the attorney and his or her client. It does not, however, protect the *information* contained within the attorney-client communication. Paul R. Rice, *Attorney-Client Privilege in the United States*, § 5.1 [West 2011]. The privilege can be waived through disclosure to a third party.

Defendants challenge the assertion of attorney-client privilege on the following documents in Plaintiff's privilege log: 34-36, 40, 42, 44-46, 48-49, 52-54, 56-57, 75, 66-70, 74, 76, 77, 84 and 85.[8] Because these documents are often e-mail strings in which portions of the e-mail may be privileged while another part may not, the Court will examine these documents *in camera*. Therefore, the documents listed above – except for No. 75 – shall be produced to the Court **by October 31, 2014**, for *in camera* inspection.

---

[7] Defense counsel has misread *Lindley v. Life Investors Ins. Co. of America*, 267 F.R.D. 382, 388 (N.D.Okla. 2010). Defense counsel stated that *Lindley* requires application of state law as to attorney-client privilege in this case. [Dkt. No. 100, at 9]. That is incorrect. Since this case is premised on <u>federal question</u> jurisdiction under the Fair Labor Standards Act, Federal common law governs attorney-client privilege. Fed.R.Evid. 501.

[8] Plaintiff did not assert attorney-client privilege on Doc. No. 75 in its Privilege Log.

### (3) Work Product

This Court has discussed the parameters of work-product protection in *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 624-32 (N.D.Okla. 2009). The work-product doctrine strikes a balance between the benefits of an adversary system and liberal discovery rules. *Anderson v. Hale*, 202 F.R.D. 548 (N.D.Ill. 2001). Liberal discovery rules provide parties with the fullest possible knowledge of the operative facts of the case before trial to reduce surprise and ensure that cases are decided on the merits. On the other hand, to arrive at the truth, the adversary system pits attorneys against each other and charges them with gathering information, sifting through it, and developing strategy. *Id.* at 553-54 (citations omitted).

Thus, while the work-product doctrine shields the documents and things prepared by an attorney or party representative, it does not protect the underlying facts contained in the documents from discovery. *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

### (4) Deliberative Process Privilege.

The purpose of the deliberative process privilege is to protect, in limited circumstances, communications of the governmental executive, "where disclosure would harm the lawful exercise of executive authority or adversely affect the quality of advice the executive received from subordinates." *Chevron U.S.A., Inc. v. U.S.*, 80 Fed. Cl. 340, 355 (Fed. Cl. 2008), *reconsidered in part*, 83 Fed. Cl. 195,

195-96 (attorney-client privilege claims).  Where applicable, the privilege protects communications within the federal government, and between the government and its outside consultants, related to transfer of information in the deliberative process of the government agency.  Paul F. Rothstein & Susan W. Crump, *Federal Testimonial Privileges* § 5:3 [2d ed. 2011].

The privilege protects documents such as advisory opinions, recommendations, and deliberations that would disclose the mental processes of an agency while making or formulating a policy or decision.  The privilege may include materials generated by agency employees as well as consultants.  *Stewart v. U.S. Dept. of Interior*, 554 F.3d 1236, 1239 (10th Cir. 2009).

There are two essential elements of the privilege:  First, it applies only to *pre-decisional* communications.  *Senate of Puerto Rico v. U.S. Dept. of Justice*, 823 F.2d 574, 585 (D.C.Cir. 1987).  Second, it applies only to *deliberative* communications, such as advisory opinions and recommendations.  *Zenith Radio Corp. v. U.S.*, 764 F.2d 1577, 1580 (Fed. Cir. 1985).  *See also, Utah Medical Products v. McClellan*, 2004 WL 988877, *2 (D.Utah March 31, 2004).

Defendants argue that the privilege does not apply here because it only protects deliberations in development of public policy, however, courts have held to the contrary.  Agency deliberations leading to a decision whether or not to sue may be protected by the privilege.  *See U.S. v. Novak*, 2014 WL 4898072, *2 (N.D.Ill. Sept. 28, 2014) (*citing U.S. v. Zingsheim*, 384 F.3d 867 (7th Cir. 2002));

*Kennedy v. U.S. E.E.O.C.*, 2014 WL 4908716, *4 (S.D.Ind. Sept. 29, 2014); *U.S. v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). If the privilege is established, the burden shifts to the party requesting disclosure to make a particularized evidentiary showing of need. *Farley*, 11 F.3d at 1389-90.

Defendants have not shown a "particularized need" for any specific document(s) upon which the privilege has been claimed. Because the Court rejects the Defendants' broad, general attack on the privilege – *i.e.*, that it does not apply to litigation decisions – and because Defendants have not established a particularized need for any specific document, the Motion to Compel in this regard is **DENIED**.

## DEFENDANTS' SPECIFIC DISCOVERY ISSUES [Dkt. No. 62]

The Court has reviewed the briefs of counsel and examined the discovery requests and responses. The issues are addressed below as identified in Defendants' brief in support of the Motion to Compel Discovery.

Discovery Dispute No. 1. Int. No. 1. **DENIED**. Plaintiff has sufficiently answered the interrogatory. The residential address of Government employees is not relevant or reasonably calculated to lead to discovery of admissible evidence.

Discovery Dispute No. 2. Int. No. 2. **DENIED**. Interrogatory No. 2A is, on its face, an overly broad "omnibus" discovery request. Plaintiff has sufficiently responded to 2B and 2C.

Discovery Dispute No. 3. RFP No. 1. **DENIED.** See 2A above.

Discovery Dispute No. 4. Int. No. 3. **DENIED** as to Interrogatory No. 3A-C. (If he has not already done so, Plaintiff shall to provide the names of persons with knowledge of the issues involved in this case, without revealing who is an informer or has been interviewed.)

**GRANTED IN PART as to Int. 3D.** Plaintiff shall offer a factual summary of the information it has acquired from interviews with potential witnesses. Information that would reveal the identity of the interviewee may be redacted, pursuant to Government Informer's privilege and work product protection. **DENIED** as to Int. 4E.

Discovery Dispute No. 5. RFP No. 2. **DENIED.** Privileged.

Discovery Dispute No. 6. RFP No. 3. **GRANTED IN PART DENIED IN PART.** Plaintiff shall certify that all non-privileged, responsive documents have been produced.

Discovery Dispute No. 7. RFP No. 4. **DENIED.** Plaintiff has adequately responded.

Discovery Dispute No. 8. RFP No. 5. **GRANTED.** Plaintiff shall produce copies of the Field Operation Handbook(s) in use from 2009 through November 30, 2014.

Discovery Dispute No. 9. Int. No. 4. **GRANTED.** Plaintiff shall answer the Interrogatory. Boilerplate objections are deemed waived.

Discovery Dispute No. 10. Int. No. 5. **GRANTED IN PART AND DENIED IN PART**. **GRANTED** as to Int. No. 5(A) and (B). **DENIED** as to 5(C) and (D). Defendants' Interrogatory includes an improper omnibus discovery request seeking all documents "involving" the claims and defenses herein.[9]

Discovery Dispute No. 11. RFP No. 6. **DENIED**. See *infra*.

Discovery Dispute No. 12. RFP No. 7. **DENIED**. Privileged Government informers' privilege, work product.

**DEFENDANTS' SECOND MOTION TO COMPEL [Dkt. No. 74]**

Defendants' Second Motion to Compel seeks to compel answers to Interrogatory No. 6 and Request for Production No. 7. Defendants contend that these discovery requests were carefully crafted to avoid infringing on the Government Informers' privilege.

Interrogatory No. 6. **GRANTED IN PART AND DENIED IN PART**. Plaintiff shall answer Int. 6 Parts A and B. **DENIED** as to Part C and its subparts.

Request for Production No. 7. **DENIED**. See *infra*.

---

[9] A response to a discovery request seeking every document involving claims and defenses is problematic, but it is made more difficult where, as here, the Defendant asserts 18 affirmative defenses, including defenses such as contributory negligence, injury by fellow servant and laches, that appear to have nothing to do with the case. [Dkt. No. 34, at 2-3].

For the reasons set forth above, Defendants" Motion to Compel [Dkt. Nos. 62 &63], and Defendants' Second Motion to Compel [Dkt. Nos. 74 & 75], are **GRANTED IN PART AND DENIED IN PART.**

**IT IS SO ORDERED** this 20th day of October 2014.

_____
Paul J. Cleary
United States Magistrate Judge