# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THOMAS E. PEREZ, Secretary of Labor, | ) | |
| United States Department of Labor, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 12-CV-588-JED-PJC** |
| | ) | |
| EL TEQUILA, LLC, and | ) | |
| CARLOS AGUIRRE, Individually, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court are Defendants' Motion for Stay of Execution and Waiver of Supersedeas Bond or, in the Alternative, Approval of a Supersedeas Bond Consisting of Irrevocable Letters of Credit in the Total Amount of $300,000 (the "Motion") (Doc. 319) and plaintiff's (the "Secretary") Response in Opposition to the Motion (Doc. 326). On March 10, 2016, the Court held a hearing on the parties' filings.

## Background

On December 22, 2015, following a jury trial, the Court entered a judgment granting the Secretary's renewed motion for judgment as a matter of law, based on its conclusion that defendants willfully violated the Fair Labor Standards Act. (Doc. 307). On January 6, 2016, the Court entered an Amended Judgment in the amount of $2,137,627.44. (Doc. 313). Defendants appealed on January 7, 2016. (Doc. 314). On January 12, 2016, defendants filed the Motion, seeking a stay on execution of the judgment pending appeal and waiver of a supersedeas bond or, alternatively, a reduced supersedeas bond in the amount of $300,000, consisting of irrevocable letters of credit. The Court granted the Motion in part, as to the stay of execution pending a

hearing on the supersedeas bond issue.  (Doc. 334).  The Court also authorized expedited post-judgment discovery pursuant to Rule 69 of the Federal Rules of Civil Procedure. (*Id.*).

Defendants' positions both in the Motion and at the March 10 hearing, remained that posting the full amount of the bond would be impossible and impracticable.  In support of their position, defendants relied solely on a one page signed affidavit from defendant Carlos Aguirre which stated that "Defendants do not have such assets" to post the full bond.  The affidavit further stated that requiring payment of the bond in full would force the restaurants "to seek bankruptcy," and "to [] close[] and all the employees would be without jobs." (Doc. 319-1, ¶ 4).[1]

The Secretary opposed the Motion on several grounds.  The Secretary argued that Mr. Aguirre's single affidavit was not enough to serve as credible evidence in support of waiving or reducing a supersedeas bond.  (Doc. 326 at 3).  Next, the Secretary took issue with the fact that defendants' Motion only cited to the restaurants' alleged financial situation and made *no mention* of defendant Carlos Aguirre's own financial solvency, or lack thereof.  (*Id.*).  The Secretary also stated that defendants erred in filing the Motion without providing any evidence of "diligent efforts undertaken to secure the full supersedeas bond." (*Id.*).

At the March 10 hearing, the Secretary introduced substantial evidence obtained from Rule 69 discovery regarding the finances of both defendants in the form of deposition testimony, bank statements, tax returns, safety deposit box information, lines of credit, balance sheets, real

---

[1] To be clear, the affidavit contained five numbered statements in support of defendants' claim that they lacked sufficient assets to post a full bond: the first stating "I am a Defendant in this civil suit"; the second stating that the facts in the affidavit "are based on [Aguirre's] personal knowledge"; the third stating that the Amended Judgment amount was $2,137,627.44; and the fifth stating "Further Affiant sayeth not."  The fourth paragraph was only marginally relevant and its substance is fully stated above.  (Doc. 319-1, ¶¶ 1-5)

estate mortgages, life insurance, property taxes, car titles, and insurance statements.  (*See* Exs. 1-6).[2]  Defendants provided no additional evidence in support of their Motion.[3]

## **Standard**

Rule 62(d) of the Federal Rules of Civil Procedure provides:

> When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay . . . . The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

Fed. R. Civ. P. 62(d).  The Tenth Circuit has recognized that "the purpose of a supersedeas bond is to secure an appellee from loss resulting from the stay of execution and that a full supersedeas bond should be the requirement in normal circumstances."  *Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986) (citations omitted).  The district court has "inherent discretionary authority in setting supersedeas bonds." *Id.*; *see also Strong v. Laubach*, 443 F.3d 1297, 1299 (10th Cir. 2006) ("The bond secures the judgment against insolvency of the judgment

---

[2] At the March 10 hearing, the Secretary introduced six exhibits into the record: charts summarizing Aguirre's finances admitted pursuant to Rule 1006 of the Federal Rules of Evidence (Ex. 1), the transcript of Aguirre's March 3, 2016 deposition (Ex. 2),  a CD with 1225 pages of financial documents produced by defendants in response to Rule 69 discovery, such as bank statements, tax returns, safety deposit box information, lines of credit, balance sheets, real estate mortgages, life insurance, property taxes, car titles, and insurance statements (Ex. 3), additional Rule 69 discovery documents provided by defendants on March 7, 2016 (Ex. 4), El Tequila, LLC's balance sheet as of December 31, 2015 (Ex. 5), and documents related to properties owned by Aguirre obtained from the Tulsa County Assessor's website (Ex. 6).

[3] At the hearing, defendants sought to introduce an expert witness to testify regarding El Tequila, LLC's projected financial solvency *in 2016*.  The Court did not allow the expert to testify because (1) defendants failed to comply with Local Rule 43.1 by not disclosing the witness to the Court prior to the hearing, and (2) the Court determined that predictions regarding the restaurants' financial state in the coming months have little, if any, relevance to the defendants' ability to post the bond at this time.

On March 22, 2016, with permission from the Court, defendants supplemented the record with interrogatories and requests for production propounded by the Secretary pursuant to Rule 69. (Doc. 356).

debtor and is usually for the full amount of the judgment, though the district court has discretion in setting the amount.").

## Discussion

The Court having considered the parties' briefing, the argument from the March 10 hearing, the evidence, and applicable law, finds that waiver or reduction of the supersedeas bond will not be granted in this case.   As discussed further herein, defendants' request is denied given their abject failure to satisfy their burden of objectively demonstrating financial difficulty and thus the Court cannot depart from the normal rule of requiring defendants to post the full bond. In stark contrast to the defendants' showing, the Secretary introduced substantial evidence demonstrating that defendant Carlos Aguirre's net worth alone exceeds the amount of the supersedeas bond.

### *Defendants' evidence*

There is no question that defendants failed to make the requisite showing of financial difficulty in support of the Motion.  In fact, defendants were unable to provide any objective evidence of financial difficulty for either defendant Aguirre or defendant El Tequila, LLC. Including the El Tequila LLC assets available from the four restaurants, the defendants' ability to post a full bond is even more so beyond dispute.[4]

Tenth Circuit law makes clear that the party seeking waiver or reduction of a supersedeas bond has the burden to objectively demonstrate financial difficulty in posting the entire bond amount.  *See Paynter*, 807 F.2d at 873-74; *Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979) ("If a court chooses to depart from the usual requirement of a full security supersedeas bond to suspend the operation of an unconditional

---

[4]  El Tequila, LLC is comprised of four restaurants.

money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such a departure."); *see also Farm Bureau Life Ins. Co. v. Am. Nat. Ins. Co.*, 2009 WL 961171, at *1 (D. Utah Apr. 8, 2009) ("The appealing party has the burden of demonstrating objectively that posting a full bond is impossible or impractical."); *United States v. Kurtz*, 528 F. Supp. 1113, 1115 (E.D.Pa.1981) ("It is the appellant's burden to demonstrate objectively that posting a full bond is impossible or impractical; likewise it is the appellant's duty to propose a plan that will provide adequate (or as adequate as possible) security for the appellee.").

As stated above, defendants' Motion is premised solely upon a one-page affidavit signed by defendant Aguirre.  Case law that defendants themselves rely on makes clear that an affidavit, without more, is not enough to justify waiving the full supersedeas bond requirement.[5]  *Paynter*, 807 F.2d at 874 (affidavit in combination with additional evidence of limited financial assets ascertained at hearing warranted reduced bond amount); *see also Am. Bank & Trust Co. v. Bond Int'l Ltd.*, 2007 WL 1187997, at *4 (N.D. Okla. Apr. 19, 2007) ("*Paynter* does not suggest that a judgment debtor's bare assertion that he lacks sufficient funds to post a full supersedeas bond justifies waiving [the full supersedeas bond] requirement.").

The affidavit itself merely states a claim that defendants "do not have assets" to post the full bond.  (Doc. 319-1, ¶ 4).  The case law is clear that an affidavit of this type is not enough, yet no objective evidence of any kind was provided from the defendants.  Further, the Court notes defendants' utter failure to mention Aguirre's financial status in his affidavit, despite the fact that both Aguirre and El Tequila, LLC are jointly and severally liable for the judgment.[6]

---

[5] The Court's February 17, 2016 Order (Doc. 334) setting the hearing made clear that, based on the affidavit alone, defendants' Motion could not be granted.  (Doc. 334 at 2).

[6] At his deposition, Aguirre acknowledged that he is responsible for the entire judgment amount. (Ex. 2, at 12:7-13).

Equally troubling is defendants' inability to produce evidence in support of their assertion that they are only financially capable of providing $300,000 in irrevocable letters of credit. At the hearing, defendants were unable to explain to the Court how they determined the reduced amount of $300,000. While the Court recognizes that alternative security to a supersedeas bond may be appropriate in some circumstances, it is not in this case, as defendants failed to demonstrate that their "present financial condition is such that the posting of a full bond would impose an undue financial burden" that justifies "some other arrangement for substitute security." *Poplar Grove*, 600 F.2d at 1191.

*The Secretary's evidence*

The Secretary provided an abundance of evidence at the March 10 hearing which unquestionably demonstrates that defendant Aguirre is financially secure and certainly capable of posting the entire supersedeas bond. Importantly, defendants did not contest the Secretary's evidence, nearly all of which came from the defendants themselves.

The Court may take into account evidence from the party opposing waiver or reduction of a full supersedeas bond that contradicts the movant's assertions of financial difficulty. *See Paynter*, 807 F.2d at 874. The Secretary's evidence shows that Aguirre maintains twenty bank accounts in his name—one account for each of the four restaurant locations, and the remaining sixteen accounts for personal use.[7] Based on Aguirre's bank statement balances from December

---

[7] It should be noted that while Aguirre maintains separate accounts for his personal use and business use, the money is not treated as though separate. For example, Aguirre testified that he did not regularly make his federal income tax payments from a specific account, but could have made payments from "any of the accounts." (Ex. 2, at 170:5-12). Further, Aguirre recently opened a personal Central Bank of Oklahoma account, but records show that the flow of money to and from this account includes funds from both Aguirre's personal and restaurant accounts. (Ex. 2, at 84:1-85:6).

2015 through February 2016, Aguirre has available approximately $586,792 in cash across these accounts.   (Ex. 1).   Aguirre also stores cash in safety deposit boxes at his home and at two restaurant locations, in the total amount of $62,000.   Aguirre's estimated total cash on hand is thus $648,792.[8]   (*Id.*).

Aguirre owns thirteen properties: eight homes and one vacant plot of land in Oklahoma, two homes in South Carolina, and two homes in Guatemala, the second of which is being built at this time.[9]   (Ex. 1; Ex. 6; Ex. 2, at 43:21-25).   Aguirre owns all of the fixtures and equipment at each of the four El Tequila, LLC locations (Ex. 2, at 188:17-25), which he valued at a total amount of $396,532.56.   (Ex. 5).   Aguirre also owns three cars, each of which he bought with cash, with a total value of $107,000. (Ex. 2, at 155:23-158:18; Ex. 1).   The Secretary's summary exhibit demonstrates that Aguirre's total net worth—comprised of cash and property—is approximately $2,891,142 (Ex. 1).   Taking into account Aguirre's deposition testimony,[10] however, this amount is more likely $2,991,142 or more.   This number alone is more than the full value of the supersedeas bond.

But that is not the extent of Aguirre's wealth.   In addition to the nearly $3 million Aguirre has readily available at this time, he regularly receives income from two sources: profits from his four restaurants and rental payments from his seven rental properties.   (Ex. 1; Ex. 2, at 168:13-

---

[8] This number is significantly higher as of March 3, 2016, based on Aguirre's deposition testimony.   Aguirre's testimony suggests that the additional funds deposited in each restaurant account may equal an additional $100,000.   (*See* Ex. 2, at 76:20-77:3, 81:17-21, 85:18-86:3; 91:23-92:3). This implies that Aguirre's estimated total cash on hand is closer to $750,000 or more.

[9] Aguirre purchased one of the Guatemala properties, which he referred to as a vacation property "[r]ight in front of the water," in December 2015 for $265,000 in cash.   Aguirre admitted that he bought the property after the $1.7 million judgment had been entered against him.   (Ex. 2, at 21:22-25, 24:13-25:2, 38:2-24).

[10] *See supra* note 8.

14).   Aguirre's tax returns indicate that the restaurants have done extremely well in the past few years, netting gross sales of between $4.6 million and $8.6 million per year from 2009 through 2014.  (Ex. 3, at 1009, 1033, 1092, 1115, 1149; Ex. 1).  Aguirre testified that his adjusted gross income from 2009 to 2014 was $4,011,391.  (Ex. 2, at 214:3-7).[11]

Moreover, the evidence shows that Aguirre is virtually debt free.  He testified that of his thirteen properties in Oklahoma, South Carolina, and Guatemala, only one of his properties has a mortgage, and that mortgage has a balance of $62,601.70.[12]  (Ex. 2, at 129:21-130:1; Ex. 3, at 1183-84; Ex. 4, at 1254).   Aguirre also has a single line of credit in the amount of $200,000. (Ex. 3, at 1168-69). The evidence thus clearly demonstrates that Aguirre's wealth—nearly $3 million in cash and equity, in addition to regular income from his restaurants and rental properties—far exceeds the amount of the supersedeas bond.[13]

*Analysis*

---

[11] Aguirre's ability to loan, donate, or give large sums of money to others is also indicative of his significant wealth.   For example, Aguirre's charity donations equaled $125,357 in 2014 (Ex. 3, at 1008), $92,941 in 2013 (Ex. 3, at 1032), $77,529 in 2012 (Ex. 3, at 1073), and $79,340 in 2011 (Ex. 3, at 1091).  Aguirre also transferred a total of $116,900 to family members from December 2014 through December 2015.  (Ex. 1).  The El Tequila, LLC balance sheet as of December 31, 2015 lists $1,328.67 in employee loan/advance assets.  (Ex. 5).

[12] This debt is not a conventional debt, however.  Aguirre bought the property for his brother and his brother makes regular payments to Aguirre toward the mortgage.  (Ex. 2, at 124:15-25).

[13] In addition to the fact that defendants ignored Aguirre's substantial wealth in filing the Motion, the Court is also troubled by the actions Aguirre took in relation to his finances both during the litigation and pending resolution of the supersedeas bond matter.   Specifically, Aguirre testified that he opened a new personal account with the Central Bank of Oklahoma upon counsel's advice—"in case any of the other accounts were to be frozen"—so that he may "cover any kind of expenses." (Ex. 2, at 85:7-12; *see also* Ex. 2, at 47:22-48:6). On January 19, 2016, just after the Amended Judgment was entered against him, Aguirre transferred $530,000 from the four restaurant accounts and one personal account into the new Central Bank of Oklahoma account.  (Ex. 3, at 984; *see also* Ex. 2, at 83:23-85:12).  Additionally, Aguirre placed seven pieces of his property into a revocable living trust on November 17, 2015.  (Ex. 4, at 1222-31).

In light of the overwhelming and uncontroverted evidence the Secretary has provided demonstrating Aguirre's financial stability, compared to the lack of objectivity of Aguirre's affidavit in support of the Motion and defendants' failure to provide the Court with any additional evidence, the Court finds defendants will not suffer irreparable harm as they repeatedly assert if required to post the full supersedeas bond.  The Court further finds that alternative security of $300,000 in letters of irrevocable credit is unwarranted.

The Court notes that *Paynter*, which defendants cite in support of the Motion (Doc. 319), is particularly instructive here.  In *Paynter*, the Tenth Circuit upheld the district court's order allowing the judgment debtor to post $500,000 in lieu of the full supersedeas bond payment of $2.1 million, because the evidence ascertained at the supersedeas bond hearing "indicate[d] that [the debtor] did not have any significant assets."  807 F.2d at 872 (noting that after the verdict was entered against him, the debtor withdrew all the funds from his bank account, lost between $60,000-$70,000 gambling, and shut down his law practice). The exact opposite is true in this case.  In their filings and at the March 10 hearing, defendants have provided nothing more than empty assertions that the El Tequila, LLC restaurants will face insolvency if defendants are required to post the full bond.  Aguirre himself has experienced no recent financial hardship, as is evident by his purchase of a vacation property after judgment was entered against him.  The Court cannot find, as defendants repeatedly contend, that any "extraordinary and unusual circumstances" (Doc. 319 at 2) exist to justify waiving or reducing the supersedeas bond.  In the absence of such evidence, the Court may not ignore its duty to ensure that the Secretary's judgment is protected during appeal.  *See Paynter*, 807 F.2d at 873.

The Court's holding is consistent with decisions issued by other district courts faced with motions to waive or reduce supersedeas bonds.  *See, e.g.*, *Arriaga v. Jess Enterprises*, 2014 WL

9

1875917 (N.D. Tex. Apr. 10, 2014) (denying motion to file irrevocable letter of credit in lieu of supersedeas bond where parties failed to objectively demonstrate reasons from departing from the full bond); *Farm Bureau Life Ins. Co. v. Am. Nat. Ins. Co.*, 2009 WL 961171 (D. Utah Apr. 8, 2009) (ordering debtor to post full supersedeas bond because the debtor's net worth was greater than the judgment, and thus "requiring the company to post a bond in the amount of the full award would not financially compromise the company"); *Am. Bank & Trust Co. v. Bond Int'l Ltd.*, 2007 WL 1187997 (N.D. Okla. Apr. 19, 2007) (finding waiver of full supersedeas bond based on a single affidavit improper, but granting reduced bond because other evidence in the record demonstrated defendants faced "significant financial difficulties"); *Slaby v. Berndt*, 2007 WL 5517473 (W.D. Wisconsin Apr. 5, 2007) (stating that defendants provided "no basis" to justify "substitut[ing] the line of credit for a [supersedeas] bond"); *Evolution, Inc., v. Sun Trust Bank*, 2005 WL 1041348 (D. Kan. Jan. 10, 2005) (rejecting irrevocable letter of credit in lieu of the full supersedeas bond where debtor failed to satisfy burden); *Sierra Club v. El Paso Gold Mines, Inc.*, 2003 WL 25265871 (D. Colo. Apr. 21, 2003) (denying defendant's proposal of alternative security in lieu of a full supersedeas bond where defendant did not provide sufficient evidence in support of the proposal, and failed to objectively demonstrate financial inability to post the full bond). Accordingly, waiver of the full bond requirement is not appropriate in this case.

## Conclusion

Defendants' Motion (Doc. 319) requests that the Court waive the entire supersedeas bond of $2,137,627.44 or alternatively, grant a reduced supersedeas bond consisting of $300,000 in letters of irrevocable credit. There is no question that defendants, by producing only a single-page affidavit and only cursory argument at the March 10 hearing, have failed to meet their

burden to demonstrate that they are entitled to waiver of the standard requirement to post a supersedeas bond for the full amount of the monetary judgment issued by the Court.   The absence of credible evidence to support defendants' Motion stands in stark contrast to the voluminous records introduced by the Secretary which indisputably show that defendant Aguirre's wealth renders him able to post the entire bond.   Accordingly, the Court denies the defendants' request to waive or reduce the supersedeas bond amount.

**IT IS THEREFORE ORDERED** that defendants' Motion (Doc. 319) is **granted in part** and **denied in part**.   The Motion is **granted** as to the defendants' request to stay enforcement of the judgment pending appeal, but defendants' request to waive the entire bond amount or alternatively, post a reduced supersedeas bond of $300,000 in irrevocable letters of credit, is **denied**.

The stay of execution herein ordered is conditioned upon defendants' compliance with the following terms:

1. Defendants shall post a supersedeas bond in the entire amount of $2,137,627.44 plus 0.66 percent interest[14] within fifteen (15) days of the date of this Order.   If the supersedeas bond plus interest is not posted in full, the Secretary is entitled to execute on the Amended Judgment.

2. From the date of this Order until the appeal of the judgment in this matter is resolved, defendants are prohibited from transferring any assets, including but not limited to money and/or real property, other than what is reasonably necessary for purposes of

---

[14] The interest rate of 0.66 percent was the weekly average 1-year constant maturity treasury yield for the calendar week preceding January 6, 2016, the date of the Amended Judgment.   *See* 28 U.S.C. § 1961(a).   Post-judgment interest is to be calculated from the date of entry of the judgment order.   *Id.*   The rate is published by the Board of Governors of the Federal Reserve System at http://www.federalreserve.gov/releases/h15/current/.

providing for costs of living and operating the El Tequila, LLC restaurants within the regular course of business and operation.  This requirement applies to all bank accounts held by defendant Carlos Aguirre, defendant El Tequila, LLC, defendant Carlos Aguirre's spouse and/or children, and/or held in trust.

**SO ORDERED** this 22nd day of March, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

12